UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER SPEARS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02934-TWP-MJD |
| | ) |
| SUR LA TABLE, INC., | ) |
| MARQUEE BRANDS, LLC, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Marquee Brands, LLC's Motion to Dismiss, [Dkt. 16]. On March 7, 2022, Chief District Judge Tanya Walton Pratt designated the undersigned Magistrate Judge to issue a Report and Recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 27.] For the reasons set forth below, the Magistrate Judge recommends that the motion be **GRANTED**.

**I. Background**

The following factual allegations are recited from Plaintiff's Complaint, [Dkt. 1], filed on November 29, 2021.[1]

Plaintiff Heather Spears resides in Marion County, Indiana. [Dkt. 1 at 1.] Defendant Sur La Table, Inc. ("Sur La Table"), is a Washington corporation doing business in Indiana. [Dkt. 1 at 1.] Defendant Marquee Brands, LLC ("Marquee"), is a Delaware limited liability company with its principal place of business in New York; Marquee is not registered with the Indiana

---

[1] As explained below, Marquee disputes many of these allegations.

Secretary of State. [Dkt. 1 at 1, n.1.] "At the times relevant to her claims, [Plaintiff] was an employee of Defendants." [Dkt. 1 at 1.]

Plaintiff "has a condition which significantly restricts the ordinary functioning of her musculoskeletal system," and she thus qualifies as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. [Dkt. 1 at 2.] While employed at Sur La Table's customer service call center in Brownsburg, Indiana, *see* [Dkt. 28 at 4], Plaintiff alleges that she began experiencing discrimination based on her disability status in January 2020. [Dkt. 1 at 2.] Specifically, Plaintiff claims she sought a workstation that would accommodate her wheelchair as well as assistive software to aid her in data entry, but both requests were denied. [Dkt. 1 at 2.]

According to Plaintiff, Sur La Table was then "acquired by Marquee,"[2] at which point Marquee "extended offers of employment to all (or very nearly all) of [Plaintiff's] co-workers within her area," but "did not extend an offer of employment" to Plaintiff. [Dkt. 1 at 2-3.] She argues that Defendants failed to accommodate her and "were motivated, at least in part, by [her] disability in making the decision not to hire, retain, transfer, or assign [Plaintiff] when employees transferred from Sur La Table to Marquee Brands," in violation of the ADA. [Dkt. 1 at 3.]

---

[2] Plaintiff's allegations regarding the identity of her employer(s) are, in a word, confusing. Plaintiff seems to allege that she was employed by both Defendants at all times relevant to her claims. *See* [Dkt. 1 at 1] ("At the times relevant to her claims, Spears was an employee of Defendants"; "At the times relevant to Spears' claims, Sur La Table, Inc. was Spears' employer"; "At the times relevant to Spears' claims, Marquee Brands, LLC was Spears' employer"); *see also* [Dkt. 1 at 2] ("Defendants, individually and together, were Spears' employers within the meaning of the ADA"). However, the Court notes that this allegation is contradicted by Plaintiff's statement that Defendant Sur La Table was "acquired" by Defendant Marquee at some point during her employment with Sur La Table. *See* [Dkt. 1 at 2]. Perhaps what Plaintiff meant to allege was that she was employed by each of the Defendants *in turn* and that at all relevant times one of the Defendants was her employer. This, too, is confusing, however, inasmuch as she alleges that Marquee did not extend an offer of employment to her, so it is unclear how she was an employee of Marquee.

On February 25, 2022, Marquee moved to dismiss Plaintiff's claim against it due to lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. 16.] Plaintiff filed a response, [Dkt. 28], and Marquee subsequently filed a reply, [Dkt. 29].

## II.  Legal Standard

"Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). Here, Plaintiff brings her Complaint under the ADA, which does not provide for nationwide service of process. Accordingly, Indiana Trial Rule 4.4(A), Indiana's long-arm provision, applies and expands personal jurisdiction to the full extent permitted by the Due Process Clause. The Court may therefore "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *see also Tamburo*, 601 F.3d at 700-01.

Understanding this, personal jurisdiction "can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). A court may assert general personal jurisdiction "over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317); *see Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence"). On the

other hand, specific personal jurisdiction "depends on an affiliation between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (citation and internal quotation marks omitted).

Where, as in this case, a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Because the Court is ruling "on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing," Plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

To determine whether the exercise of personal jurisdiction is appropriate, "a court may receive and weigh affidavits prior to trial on the merits." *Nelson v. Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (citing *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 783 (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001)). Accordingly, when deciding a motion to dismiss for lack of personal jurisdiction, the allegations in the plaintiff's complaint "are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (citing *O'Hare*, 437 F.2d at 1176); *see also ING (U.S.) Sec., Futures & Options, Inc. v. Bingham Inv.*

*Fund, LLC*, 934 F. Supp. 987, 988 (N.D. Ill. 1996) (where the defendant's affidavit directly denied the allegations in the plaintiff's complaint and the plaintiff did not furnish its own affidavit, the court could not take the allegations in the complaint as true); *see also Polansky v. Anderson*, 2005 WL 3557858, at *2 (N.D. Ill. Dec. 29, 2005) ("We resolve all factual disputes in the record in plaintiff's favor, but we may accept as true those facts presented in defendant's affidavit that remain uncontested.") (citing *Purdue Rsch. Found.*, 338 F.3d at 783; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997)).

### III.  Discussion

Marquee moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks both general and specific personal jurisdiction over it. [Dkt. 16.] Plaintiff does not expressly argue that Marquee is subject to general jurisdiction in Indiana,[3] and thus the Court turns to the issue of specific jurisdiction.

The exercise of specific jurisdiction is appropriate "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists*, 623 F.3d at 444 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 472 (1985)). Specific personal jurisdiction is therefore evaluated "by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo*, 601 F.3d at 702. Plaintiff bears the burden of establishing a prima facie showing that personal jurisdiction exists. *Purdue Rsch. Found.*, 338 F.3d at 782. As noted above, Plaintiff's Complaint sets forth contradicting allegations that, at all times relevant to her claims, both Sur La Table and Marquee were her

---

[3] The Court notes that Plaintiff's response to Marquee's Motion to Dismiss is less than thorough; it is merely four pages long and it does not include a single citation to relevant caselaw or statutes. *See* [Dkt. 28]. The Court reminds Plaintiff that "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

employers, and that Marquee acquired Sur La Table at some point after she began experiencing disability discrimination. [Dkt. 1 at 1, 2.] However, Marquee, supported by the affidavit of Michael Neuman, Vice President of Legal Affairs, disputes Plaintiff's characterization of the events.

Marquee "is in the business of purchasing intellectual property ("IP") assets of consumer brands and then finding ways to monetize those assets." [Dkt. 16-1 at 1.] After Sur La Table filed for bankruptcy in July 2020, *see* Case Nos. 3:20-bk-18367-MBK (D.N.J.) and 3:20-bk-18368-MBK (D.N.J.), Marquee explains that it purchased certain Sur La Table IP assets out of bankruptcy protection through its subsidiary, SLT IP Holdings LP ("Holdings"), in August 2020. [Dkt. 16-1 at 1.] Holdings is a Delaware limited partnership with its principal place of business in New York. [16-1 at 2.] The purchased assets

> included Sur La Table trademarks and logos; content and materials relating to hosting Sur La Table cooking school classes; books and records, samples, domain names, copyrighted material, patents and related licenses and license agreements; consumer data and related databases; know-how relating to the cooking schools; and designs, artwork, press books, promotional and advertising materials, historical archives, mods, samples, props, media content, and footage (collectively the "Sur La Table IP").

[Dkt. 16-1 at 1-2.] Notably, Marquee avers that it did not acquire any fixed assets, personnel, or liabilities from Sur La Table. [Dkt. 16-1 at 2.] Indeed, the Asset Purchase Agreement between Sur La Table and Holdings confirms that Marquee's acquired assets include all intellectual property licenses and other intangible assets, and excludes all liabilities regarding the employment or retention of Sur La Table employees. *See* Case No. 3:20-bk-18368-MBK (D.N.J.) ECF No. 307 at 144-214 (Aug. 3, 2020).

According to Marquee, a separate entity called SLT Lending SPV, Inc. ("Lending"), also acquired certain Sur La Table assets out of bankruptcy protection, "including the distribution

facility located in Indiana where [Plaintiff] allegedly worked." [Dkt. 16-1 at 2.] This, too, is confirmed by the Asset Purchase Agreement between Sur La Table and Lending. *See* Case No. 3:20-bk-18368-MBK (D.N.J.) ECF No. 307 at 51-143 (Aug. 3, 2020). Lending then "purchased a license from Holdings to use the Sur La Table IP in furtherance of Lending's continued operation of the Sur La Table brand." [Dkt. 16-1 at 2]; *see* [Dkt. 16-2] (license agreement between Holdings and Lending). Marquee maintains that neither it nor its subsidiary "share any common ownership or officers with Lending or have control over Lending's business operations," including employment decisions, and that "Lending is not part of the Marquee Brand family of companies." [Dkt. 16-1 at 2-3.]

Once Marquee submitted the affidavit of Michael Neuman in support of the instant motion to dismiss, Plaintiff was obligated to "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 783 (citing *Meier*, 288 F.3d at 1269; *Swiss Am. Bank*, 274 F.3d at 619). Plaintiff did not do so, and therefore Marquee's affidavit remains uncontested.

Rather than submitting evidence, in response to Marquee's motion, Plaintiff asserts that, in its acquisition of Sur La Table's IP, Marquee entered into a "partnership" with Lending's parent company, CSC Generation Holdings, LLC ("CSC"), a Delaware corporation with its principal office in Merrillville, Indiana. [Dkt. 28 at 1-2.] She then argues that

> Marquee Brands has sufficient minimum contacts with Indiana such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. Marquee Brands **has** purposefully directed its activities to the state of Indiana. It is partnered with an Indiana corporation [CSC] to exploit the intellectual property, including a store in Indiana. By Marquee Brands' admission, it licensed the Sur La Table IP to an entity doing business in Indiana—based in Indiana.

[Dkt. 28 at 3] (emphasis in original). Essentially, this is the entirety of Plaintiff's argument regarding personal jurisdiction; she provides no evidence to contest Marquee's affidavit other than screenshots from web pages in an attempt to connect Marquee and Lending. In fact, Marquee submitted a second affidavit from Michael Neuman along with its reply brief, in which he avers that neither Marquee nor Holdings bears any relation to CSC or Lending, and reiterates that they "do not make any employment decisions of behalf of" Sur La Table. [Dkt. 29-1 at 1-2.] Plaintiff did not file a surreply with countering evidence, and thus both of Marquee's affidavits remain uncontested.

Still, for the purpose of the motion to dismiss, the Court accepts Plaintiff's argument that, by leasing the Sur La Table IP to a company doing business in Indiana, Marquee has "purposefully direct[ed] its activities at the forum state." *Mobile Anesthesiologists*, 623 F.3d at 444 (citing *Burger King*, 471 U.S. at 472). However, that is not where the jurisdictional inquiry ends; Plaintiff must also establish that her alleged injury arose out of Marquee's activities in the forum state. *Id.* Critically, as Marquee points out, "Plaintiff fails to recognize that specific jurisdiction only attaches if the license of that IP somehow relates to her claims of employment discrimination." [Dkt. 29 at 2] (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). Indeed, Plaintiff does not allege that her injury—employment discrimination based on her disability status—arises out of Marquee's licensure of its IP in Indiana. *See Mobile Anesthesiologists*, 623 F.3d at 444 (citing *Burger King*, 471 U.S. at 472). Her failure to do so is fatal; subjecting Marquee to the jurisdiction of this Court without adequate basis would certainly "offend traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (quoting *Int'l Shoe*, 326 U.S. at 316).

Ultimately, Plaintiff has not met her burden of establishing that the Court may properly exercise personal jurisdiction over Marquee in this case. The Magistrate Judge therefore recommends that Marquee's motion to dismiss Plaintiff's claim against it be **GRANTED**.[4]

### IV. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Defendant Marquee Brands, LLC's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), [Dkt. 16], be **GRANTED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 4 APR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] Plaintiff, in passing, additionally argues that she "is entitled to discovery on the corporate structures applied to the purchase of Sur La Table, such that dismissal is inappropriate." [Dkt. 28 at 1.] However, it was not proper for Plaintiff to make this request in her response to Marquee's Motion to Dismiss; Local Rule 7-1(a) provides that "[a] motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." Plaintiff failed to file a motion seeking to conduct jurisdictional discovery before the Court addressed the motion to dismiss.

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.